FILED

2003 NOV 17 P 4: 31

U.S. DISTRICT COURT
HARTFORD CT

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| ROBERT LEADUM ) | |
| ) | |
| *Plaintiff* ) | |
| ) | Civil Action No. |
| v. ) | 3:01-CV-01779 (TPS) |
| ) | |
| LABORERS' INTERNATIONAL UNION ) | |
| OF NORTH AMERICA, LOCAL 675 ) | November 13, 2003 |
| ) | |
| *Defendant* ) | |

## LOCAL RULE 9(C)(1) STATEMENT
## OF MATERIAL FACTS NOT IN DISPUTE

1.  Defendant Laborers' Local 675 (the "Union" or "Local 675") is a small labor organization presently representing approximately 260 members in the Greater Danbury area (Exhibit 2, Beckenbach Affidavit, ¶2). It is affiliated with the Laborers' International Union of North America (Exhibit 2, Beckenbach Affidavit, ¶2).

2.  Plaintiff Robert Leadum was a member of Local 675 from July 14, 1999 (Exhibit 9, Union Initiation Card) through approximately January 26, 2001 (Exhibit 8, Leadum resignation letter).

3.  Local 675 operates a non-exclusive "hiring hall" wherein contractors signatory to a collective bargaining agreement with Local 675 request laborers on an as needed basis from the Union (Exhibit 2, Beckenbach Affidavit, ¶ 5). Whenever possible,

Local 675 fulfills signatory contractors' needs for laborers by referring laborers who have registered with Local 675 for employment with signatory contractors (Exhibit 2, Beckenbach Affidavit, ¶ 8).

4. Because the Union's referral system operates on a non-exclusive basis, laborers frequently solicit their own employment directly with signatory contractors without relying upon the hiring hall for referrals to employment (Exhibit 2, Beckenbach Affidavit, ¶ 4). Similarly, signatory contractors have the right to retain laborers from project to project and typically rely on the hiring hall for additional referrals only when their demand for labor exceeds the capacity of their steady crews (Exhibit 2, Beckenbach Affidavit, ¶¶ 4, 8).

5. The small Local Union employs only one full-time Business Manager and one part-time office secretary. Richard Beckenbach is the Business Manager of the Danbury-based Union (Exhibit 2, Beckenbach Affidavit, ¶ 1).

6. Mr. Leadum has never been employed by Local 675 (Exhibit 2, Beckenbach Affidavit, ¶ 4).

7. Mr. Leadum's date of birth is March 27, 1931. Upon initiating into Local 675, Mr. Leadum was 68 years of age (Exhibit 9, Union Initiation Card).

8. At the time Mr. Leadum initiated into the Union he represented that he had 15 years experience as a laborer (Exhibit 2, Beckenbach Affidavit, ¶ 22).

9. During Mr. Leadum's brief 18-month membership tenure, Local 675 communicated several referral opportunities to Mr. Leadum that Mr. Leadum declined.

(Id., ¶ 20). Mr. Leadum accepted only four such referrals for employment with signatory contractors (Exhibit 6, Member Hours for Leadum).

10. Mr. Leadum's employment history with each of the signatory contractors to which he was referred was brief and problematic (Exhibit 2, Beckenbach Affidavit, ¶¶ 17-21).

11. Mr. Leadum was initially referred to a position at the Waterbury Masonry Foundation in July 1999. He retained that job until early August 1999 (Exhibit 2, Beckenbach Affidavit, ¶ 13).

12. The second referral Mr. Leadum accepted was to the Kiewit Construction Company in late August 1999. The Union waived the normal requirement of two years experience in the Union in order to allow Mr. Leadum to serve as a construction foreman (Exhibit 10, Beckenbach Deposition, Pages 44-50). He retained that job until mid-November 1999 (Exhibit 2, Beckenbach Affidavit, ¶ 14). While engaged at the Kiewit Construction Company job, Mr. Leadum encountered a few incidents which gave rise to a concern over Mr. Leadum's employment experience, skills, and desire to be there – including damaging one of the employer's trucks, loading hay not only into the bed of a truck, but also into the back seat of such truck, arguing with a female member of his crew about her ability to share the cab of his truck because of his concern about being brought-up on sexual harassment charges, spending over a week away from the job due to illness, and having what might unscientifically be described as a nervous breakdown after subordinates disregarded his orders out of a safety concerns (Exhibit 2, Beckenbach Affidavit, ¶ 17).

After this latest incident, Mr. Leadum requested a layoff from the jobsite superintendent (Exhibit 3, Kiewit Dismissal Letter). This was initially discouraged by the jobsite superintendent, but was ultimately granted after Mr. Leadum took the weekend off to consider his request and still desired the layoff (effective November 1999) (Id.).

13. The third referral Mr. Leadum accepted was to BBL-Carlton, LLC in December 1999. He retained that job until early February 2000 (Exhibit 2, Beckenbach Affidavit, ¶ 15). Mr. Leadum's BBL-Carlton position was terminated at his request; he felt that the temperature at the job site was too cold for his comfort (Exhibit 2, Beckenbach Affidavit, ¶ 18).

14. The final referral Mr. Leadum accepted was to Camputaro Leasing, LLC in September 2000 (Exhibit 2, Beckenbach Affidavit, ¶ 16). He retained that job for only two days (Exhibit 6, Member Hours for Leadum). Mr. Leadum's first day was Thursday, September 21, 2000 (Exhibit 5, Camputaro Dismissal Letter). He worked a 60-lb. jackhammer that day (Id.). That evening, Mr. Leadum ended up in the Danbury Hospital Emergency Room and was advised to avoid all 'heavy-work' until at least September 25, 2000 (Id.). He returned to Camputaro the next morning and was assigned "light-duty" work (Id.). At the end of the day, he was asked by Camputaro to return the following day (Saturday) (Id.). He agreed to do so (Id.). After not showing up on Saturday or Monday morning, Camputaro terminated Mr. Leadum's employment (Id.).

15. Mr. Leadum alleges that Local 675 discriminated against him on the basis of his age (Exhibit 1, ADEA Complaint, ¶¶ 2, *et seq*). Mr. Leadum references two events that

serve as the basis of his allegation of unlawful discrimination (Exhibit 1, ADEA Complaint, ¶¶ 16-21).

16. Mr. Leadum first contends that he was not offered a referral for a pavement-breaking 90-lb. handheld jackhammer position that was available through DeFelice Construction Company, a position which would have entailed heavy and highway construction work on Interstate 84 (I-84 Project) (Exhibit 1, ADEA Complaint, ¶ 21).

17. Though it is not clear by reference to Mr. Leadum's Complaint when the first alleged act of discrimination is alleged to have occurred (Exhibit 1, ADEA Complaint, ¶¶ 16-21), the I-84 Project referral was fulfilled by Local 675 sometime in late June/early July of 2000.

18. Mr. Leadum was at the Local Union office when the request for the I-84 referral was filled (Exhibit 2, Beckenbach Affidavit, ¶ 25).

19. Mr. Beckenbach's explanation of why Mr. Leadum was not offered the I-84 referral, as expressed by Mr. Beckenbach, was because, consistent with the operation of the referral board, Mr. Leadum was not next in line to receive laborer referral opportunities (Exhibit 2, Beckenbach Affidavit, ¶ 26). Rather, the four laborers referred to the I-84 project were ahead of Mr. Leadum on the referral board and, thus, were properly referred to the I-84 project ahead of Mr. Leadum (Exhibit 2, Beckenbach Affidavit, ¶ 26).

20. Mr. Leadum's second contention is that he was denied equal access to a Laborers' International Union of North America (International Union) training opportunity

on the basis of his age at some point during his tenure as a member of Local 675 (Exhibit 1, ADEA Complaint ¶¶17-19).

21. Local 675, by virtue of its affiliation with the International Union, is able, from time-to-time, to refer union members to training classes paid for by the International Union (Exhibit 2, Beckenbach Affidavit, ¶ 27).

22. Mr. Leadum was not selected to attend a pre-apprenticeship training class because at the time he initiated into the Union he represented that he had 15 years of laborer experience (Exhibit 2, Beckenbach Affidavit, ¶ 28). Local 675's reason for not selecting Mr. Leadum, as articulated by Mr. Beckenbach to Mr. Leadum, was because the pre-apprenticeship training class is designed to expose non-members to the experiences and expectations of laborers (Beckenbach Affidavit, ¶ 28). The only individuals from Local 675 who attended training classes during the period that Mr. Leadum was a member were individuals with no prior construction experience (Exhibit 10, Beckenbach Deposition, pages 23-24). These individuals were not members of the union (Id., 23-24). The pre-apprenticeship training class was not designed to train experienced laborers (Beckenbach Affidavit, ¶ 28).

23. Mr. Leadum filed complaints alleging the above two acts of discrimination with the Equal Employment Opportunity Commission (EEOC) and the State of Connecticut Commission on Human Rights and Opportunities (CHRO) on or about August 18, 2000.

24.  On or about June 25, 2001, the CHRO issued a "right to sue" letter to Mr. Leadum.

25.  On September 14, 2001, Mr. Leadum filed this Complaint against Local 675 in the United States District Court for the District of Connecticut, which was docketed on September 17, 2001 (Exhibit 1, ADEA Complaint).

          Respectfully submitted,

          DEFENDANT
          LABORERS' INTERNATIONAL UNION
          OF NORTH AMERICA, LOCAL 675

By:  _____
          John T. Fussell, Esq.
          John M. Brown, Esq.
          ROBERT M. CHEVERIE &
          ASSOCIATES, P.C.
          Commerce Center One
          333 East River Drive, Suite 101
          East Hartford, CT  06108-4201
          Fed. Bar # ct 17989

# CERTIFICATION

This is to certify that a copy of *Defendant's Local Rule 9(C)(1) Statement Of Material Facts Not In Dispute* was sent, first class and postage prepaid this 13th day of November, 2003, to the following counsel of record:

José Vivaldi Martinez, Esq.
60 Old New Milford Road, Suite 3D
Brookfield, CT  06804

_____
JOHN T. FUSSELL

JTF.LIUNA 675
FINAL - Statement of Undisputed Material Facts – Leadum v LIUNA 675 11-13-03