UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ROBERT LEADUM,
    Plaintiff,

v.      NO. 3:01CV1779(TPS)

LABORERS' INTERNATIONAL UNION
OF NORTH AMERICA, LOCAL 675
    Defendant.

<u>RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

The plaintiff, Robert Leadum, commenced this action against the defendant, Laborers' International Union of North America, Local 675 ("Local 675" or the "Union"), alleging willful violation of the Age Discrimination in Employment Act of 1967 (the "ADEA"), as amended, 29 U.S.C. § 621 *et seq.*, breach of contract, and intentional or negligent infliction of emotional distress. (Compl. ¶¶ 23-28). Pending before the court is the defendant's Motion for Summary Judgment (**Doc. #30**). As explained below, the defendant's motion is **GRANTED**.

I.

The standards for ruling on motions for summary judgment are well-settled. Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one "that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of demonstrating a lack of genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); FDIC v. Giammettei, 34 F.3d 51, 54 (2d Cir. 1994). The court must view all the evidence presented by the moving party in light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). If evidence exists from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

Once the moving party has satisfied his burden of production, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of material fact. Anderson, 477 U.S. at 250. The nonmoving party must identify specific facts requiring trial. Celotex Corp., 477 U.S. at 324 ("Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial'"); Anderson, 477 U.S. at 248 (a

nonmoving party "may not rest upon the mere allegations or denials of his pleadings but . . . must set forth specific facts showing that there is a genuine issue for trial"); Trebor Sportswear Co. v. The LTD. Stores, Inc., 865 F.2d 506, 511 (2d Cir. 1989). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249 (citations omitted). See also Dister v. Cont'l Group, Inc., 896 F.2d 1108, 1114-15 (2d Cir. 1988)(the nonmoving party must present "concrete evidence from which a reasonable juror could return in [plaintiff's] favor"). "Even where facts are disputed, in order to defeat summary judgment, the nonmoving party must offer enough evidence to enable a reasonable jury to return a verdict in its favor." Byrnie v. Town of Cromwell Bd. of Educ., 243 F.3d 93, 101 (2d Cir. 2001)(citations omitted).

II.

Viewing the facts in light most favorable to the plaintiff, the record alleges the following.[1]  Local 675 is a labor

---

[1] As aforementioned, to survive a summary judgment motion, a nonmoving party may not rely on colorable evidence or mere allegations, but must show "concrete evidence from which a reasonable juror could return in [plaintiff's] favor." Dister, 896 F.2d at 1114-15. The plaintiff, during his deposition, was less-than-forthcoming, to say the least. The record is replete with examples of his refusal to answer even the most basic of questions. While such a tactic may be advisable to a criminal defendant, the plaintiff's 'inability to recall' practically any facts germane to the case significantly limits this court's ability to view the facts in his favor.

organization in Danbury, Connecticut that supplies laborers to construction employers for various jobs. (Compl. ¶¶ 8-10, Beckenbach Aff. ¶ 2). Referrals are determined on a "First In, First Out" basis: those who have been out of work the longest are referred to any particular job first. (Beckenbach Aff. ¶ 6). To keep track of which of its members have been out of work the longest, Local 675 used a magnetic board that was located in the Union Hall for all its members to see. (<u>Id.</u> ¶ 7).

At the time of the events in question, the list consisted of a collection of cards attached to magnets that could be moved around the magnetic board. (Dep. of Richard Beckenbach, 2/21/03, at 11-12). As members were assigned to jobs, or solicited jobs on their own, their cards were removed from the list and those next in line were moved to the top. (<u>Id.</u> at 12). After a member completed an assignment, or was laid off, and was ready to work again, his card was placed at the end of the list.

That said, that a member is next on the list is no guarantee that he will be assigned to the next job. An employer may request a specific laborer, in which case that laborer will be assigned to the job. (<u>Id.</u> at 19). Moreover, an employer may request laborers with special skills (i.e., pipe laying, asbestos abatement, mason tendering) and if the next member in line does not possess the requisite skills, he will be passed over for the next while maintaining his place on the list. (<u>Id.</u> at 10). As a general rule, however, if the next member on the list is qualified for the

4

job, he will be assigned to it.

The plaintiff joined Local 675 on July 14, 1999 at the age of sixty-eight, with fifteen years of experience as a laborer. (Dep. of Robert Leadum, 10/8/2002, Ex. 6). While a member of the Union, the plaintiff received four referrals. (Beckenbach Aff. ¶¶ 13-16). In July 1999, he was assigned to the Waterbury Masonry Foundation and assisted the brick masons on-site. (Id. ¶ 13). He retained that job until August. (Id.) In August, he was assigned to the Kiewit Construction Company ("Kiewit") and served as foreman of a crew responsible for building a silt fence. (Id. ¶ 14).[2] While with Kiewit, the plaintiff damaged one of its trailers, filled the cab of another with hay, refused to sit next to a female crew member for fear that she would bring sexual harassment charges against him, and missed a week of work due to illness. (Dep. of Robert Leadum, 10/8/03, at 150-167, Beckenbach Aff. ¶ 17). The plaintiff claims that he was given a choice: "take a layoff or get fired."[3] (Dep. of Robert Leadum, 10/8/03, at 167). He chose the former and stopped working in November. (Id. at 168).

---

[2] The plaintiff was referred to the foreman position by Mr. Beckenbach, office manager of the Union. (Dep. of Richard Beckenbach, 2/21/03, at 47).

[3] The facts here are in dispute. The plaintiff claims that he was given the choice of being fired or accepting a layoff. The defendant, on the other hand, presents evidence which suggests that the plaintiff was laid off at his own request due to personal problems. (see Letter from David R. Wiley, General Superintendent, Kiewit Construction Company to Richard Beckenbach dated 10/4/00). For present purposes, however, the court will assume the plaintiff's unsubstantiated assertion.

In December of 1999, the plaintiff was referred to BBL-Carlton, LLC to assist the on-site brick masons. (Beckenbach Aff. ¶ 15). That job lasted until February of 2000. (Id.). Then, in September of 2000, the plaintiff accepted his final referral to Camputaro Leasing, LLC. (Id. ¶ 16). That job lasted only two days. (Id.). He hurt his hand on the first day using a 60-lb jackhammer, went to the hospital that evening and returned the next day assigned to "light duty". (Id. ¶ 19, Dep. of Robert Leadum, 10/8/03, at 242-44). However, he did not return Saturday, as he had agreed, nor Monday morning. (Beckenbach Aff. ¶ 19, Dep. of Robert Leadum, 10/8/03, at 246-53). As a result, he was dismissed from the job. (Beckenbach Aff. ¶ 19).

Generally, the plaintiff claims that, over the course of his membership in the Union, he "noticed that people lower on the referral list, who were younger than he, were being referred out ahead of him." (Pl.'s Mem. Opp. Mot., 10/8/03, at 1).[4] He periodically questioned Mr. Richard Beckenbach, the office manager at Local 675, about these practices. (Id. at 2). Mr. Beckenbach would respond that the plaintiff was mistaken and was not in fact next in line. (Id. at 3). However, Mr. Beckenbach would on

---

[4] It should be noted that the defendant offered evidence that the plaintiff, in one instance, turned down a job so that a younger man with a wife and child could accept it. (See Beckenbach Aff. ¶ 20; Letter from Jimmy V. Ribeiro, dated 3/28/02). The plaintiff denied that this took place. (Dep. of Robert Leadum, 10/8/02, at 201). For present purposes, the court will assume that the plaintiff did not turn down a job in favor of Mr. Ribiero.

6

occasion also remark: "you and I can't do that kind of work" or "we're old hens, they're looking for young bulls." (Id. at 2; Dep. of Robert Leadum, 10/8/03, at 233-235).[5]

In his complaint, the plaintiff cites two specific instances of age discrimination. First, the plaintiff claims that he had been passed over for a training program in favor of younger workers. (Pl.'s Mem. Opp. Mot., 10/8/02, at 3). Some time after asking Mr. Beckenbach whether any training programs were available, an apprenticeship program opened up and Mr. Beckenbach sent two young, non-member workers who had no experience to "get an idea of what construction is about." (Dep. of Richard Beckenbach, 2/21/03, at 23-24). The plaintiff was present in the hall when the younger workers were assigned, but said nothing. (Id. at 25). Mr. Beckenbach stated that, while the course was not designed for workers with fifteen years of experience, if the plaintiff had asked he would have sent him. (Id. at 26).[6] Second, the plaintiff

---

[5] The plaintiff claims that Mr. Beckenbach made similar comments "many times." (Dep. of Robert Leadum, 10/8/02, at 234). However, save for the I-84 Project, see infra, he is unable to specify when these comments were made nor in what context. (Id. at 234-35). When asked by defense counsel why he cannot identify specific instances, he responded: "Because I have to take consideration to try to picture, once I get the information from you, then I can try to piece together some of the things, the missing parts of the puzzle." (Id.). As far as the court can tell, the puzzle remains unfinished; the plaintiff has failed to offer any evidence regarding any other alleged instances of discrimination.

[6] The apprenticeship program was elementary. Mr. Beckenbach stated: "Well, if he wanted to go [I would have sent him]. [But] I mean, that's like you going back into the 1st grade. Do you

7

claims that he was passed over for a job on the I-84 Interstate Highway Project (the "I-84 Project") because of his age for younger workers. That job involved the use of a 90-lb jackhammer. (Id. at 38). He cannot, however, identify where he was on the list, nor those who were referred ahead of him. Mr. Beckenbach admitted to making a comment regarding the plaintiff's age, but stated that the plaintiff was not next in line. (Id. at 39-40).[7]

As a result of what the plaintiff believed to be unfair treatment, he filed a charge of age discrimination with the Connecticut Human Rights Office and the Equal Employment Opportunity Commission. (Pl.'s Mem. Opp. Mot., 12/8/03, at 3). After receiving notice of the charge, Mr. Beckenbach reported to the plaintiff that, as business manager of the union, he would "have to notify all union members in writing the action that [he] took against the union and they're not going to be too happy. . . ." (Dep. of Robert Leadum, 10/8/02, at 273).

Soon thereafter, the plaintiff noticed that people in the union hall were staring at him "like I was a reject." (Id. at 281-82). He also reported that a couple of times he was scared to

---

want to be embarrassed? You got 15 years' experience. This was not a course in scaffolding. This was not a course in piping. . . . He was way above that. Even now. With his knowledge, it would be a waste of time." (Dep. of Richard Beckenbach, 2/21/03, at 26).

[7] Mr. Beckenbach stated: "Bob [Leadum], you weren't next, and second of all, you couldn't handle that job. That's working on bridges with a jackhammer at night." (Dep. of Richard Beckenbach, 2/21/03, at 38).

8

enter the union hall through a side door because "the lights were out in the back room. .. . People were standing outside, didn't speak." (Id. at 274). The plaintiff claims that one union member told him to "watch his back," but he does not recall the person's name nor any basic identifying characteristics. (Id. at 285-87; see also Letter from Robert G. Leadum to The Commission on Human Rights and Opportunities, dated 1/26/01).[8] In addition, several years earlier, another union member, concerned that the international union was planning to consolidate Local 675 with other local unions, remarked that "anybody that bothers this union is going to get hurt pretty bad." (Id. at 275). Given the foregoing, the plaintiff claims that he feared for his safety. (Pl.'s Mem. Opp. Mot., 12/8/03, at 4).

### III.

**A.    The ADEA Claim**

When a plaintiff is unable to provide direct evidence of discrimination, courts apply the McDonnell Douglas burden shifting framework to determine whether or not an individual has been discriminated against on the basis of age. Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003)(citing McDonnell Douglas Corp. v.

---

[8] The plaintiff remarked that he needed "additional information that [defense counsel] haven't provided my counselor to be able to" to tell him who threatened him. (Dep. of Robert Leadum, 10/8/02, at 287).

9

Green, 411 U.S. 792, 802 (1973)). First, the plaintiff must establish a prima facie case of age discrimination under the ADEA. Id. at 138. Second, if the plaintiff can demonstrate a prima facie case, the burden then shifts to the defendant to "offer a legitimate, nondiscriminatory rationale for its actions. Id. Third, should the defendant proffer a neutral reason for the complained of action, the burden then shifts back to the plaintiff to prove that it is but a pretext for discrimination. Id. (quoting Stern v. Trustees of Columbia Univ. In City of New York, 131 F.3d 305, 312 (2d Cir. 1997). As the Second Circuit noted, "[t]he net result [of this trifurcated inquiry] is that an initially vague allegation of discrimination is increasingly sharpened and focused until the ultimate inquiry is one that is amenable to judicial resolution." Meiri v. Dacon, 759 F.2d 989 (2d Cir. 1985).

As the plaintiff notes, the burden of establishing a prima facie case is minimal. (Pl.'s Mem. Opp. Mot., 12/8/03, at 5 (citing Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994)). A plaintiff must establish,

> by a preponderance of the evidence, a prima facie case consisting of four elements: (1) that plaintiff falls within the protected group, (2) that plaintiff applied for a position for which he was qualified, (3) that plaintiff was subject to an adverse employment decision and 4) that the adverse employment decision was made under circumstances giving rise to an inference of unlawful discrimination.

Byrnie, 243 F.3d at 101 (citations omitted). While the Meiri Court

advised courts not to 'tarry long over' the prima facie case determination, Title VII's "sophisticated evidentiary calculus" auguring against such inquiry, the court is not convinced that the plaintiff has met even this minimal burden. <u>See</u> 759 F.2d at 996 n.10.

That the plaintiff falls within a protected group is not disputed. (<u>See</u> Pl.'s Mem. Opp. Mot., 12/8/03, at 8-9). Born in 1931, the plaintiff joined Local 675 on July 14, 1999 at the age of sixty-eight. (Dep. of Robert Leadum, 10/8/2002, 291, Ex. 6).

Moreover, by a preponderance of the evidence, the court finds that the plaintiff was qualified for the I-84 Interstate Project. The burden of establishing this element "is minimal; plaintiff must show only that he 'possesses the basic skills necessary for performance of [the] job.'" <u>Slattery v. Swiss Reins. Am. Corp.</u>, 248 F.3d 87, 92 (2d Cir. 2001) (citing <u>Owens v. New York City Housing Auth.</u>, 934 F.2d 405, 409 (2d Cir. 1991)). The plaintiff had been a laborer for over fifteen years. He had been assigned to work with a jackhammer before, albeit one that was somewhat lighter. While he injured his hand at that assignment, injuring oneself at a job does not thereby deprive one of the basic skills necessary for its performance.[9] Further, the plaintiff was clearly

---

[9] Local 675 argues that the plaintiff must establish objective criteria, such as the plaintiff's position on the referral board, to demonstrate that he is qualified. (D.'s Mem. Supp. Mot., 11/13/03, at 9). However, it fails to cite any authority in support of this argument. Moreover, the standard calls for "basic skills for the performance of the job." It asks

11

qualified for the apprenticeship program.[10]

However, the court is not convinced that the plaintiff has demonstrated that he was subject to an adverse employment decision. Under this prong, the plaintiff is required to prove, by a preponderance of the evidence, that he was subject to an adverse employment decision which is "more disruptive than a mere inconvenience or an alteration of job responsibilities." Galabaya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000)(citation omitted). Here, all that is alleged is that he "*would* be at the hiring hall and see where he was on the list. Later he *would* find his name lower on the list. He . . . *would* see workers coming with their referral slips . . . . [and] *would* hear a request for workers come in, and other people *would* be called." (Pl.'s Mem. Opp. Mot., 12/8/03, at 9)(emphasis added). The plaintiff is unable to identify his place on the referral list at the time that Local 675 assigned laborers to the I-84 Project. He

---

only whether one has the *ability* to do the job, not whether he should have been referred to it. That inquiry is more appropriate under the third prong of the prima facie case.

[10] Here, the defendant argues that because the plaintiff was over-qualified for the apprenticeship program, which "was designed to introduce uninitiated and inexperienced individuals to general laborer work," he was therefore not qualified. (See D.'s Mem. Supp. Mot., 11/13/03, at 9-10). Again, the plaintiff fails to cite any authority which dictates that anything other than a possession of the basic skills necessary to do the job may be considered when making a qualification determination. Being over-qualified necessarily implies that one is qualified. The court finds the defendant's argument creative, but unpersuasive.

is unable to identify those workers that were assigned in his stead. All that the plaintiff offers are his offhand, unsubstantiated allegations concerning what Local 675 would do from time to time. The defendant denies that it ever engaged in such a practice, but it is not their burden to disprove the truth of the plaintiff's allegations. It is the plaintiff's burden to prove that he was subject to an adverse employment decision. That a burden is minimal does not mean that it will automatically be satisfied on all occasions.[11] The plaintiff, here, has failed to meet it. Moreover, the plaintiff failed to show how not being assigned to an apprenticeship program constitutes an adverse employment decision. Regardless, the court finds such an argument unconvincing.[12]

---

[11] In fact, given the nature of the relationship between the plaintiff and Local 675, the plaintiff arguably carried a greater burden than most ADEA plaintiffs. Usually, an ADEA claim is made against ones employer. In such an instance, an adverse employment decision is almost a foregone conclusion. As the Terry Court pointed out, "[e]xamples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." 336 F.3d 128, 138 (2d Cir. 2003). These events either happened or they did not happen; and, as such, they are easy to show. Here, however, given the relationship between union member and union, the plaintiff must demonstrate that he was not referred to a particular job *and* that he was in line to be referred. By virtue of the fact that he was not referred to the I-84 Project, he is able to demonstrate the former. As explained above, he failed to demonstrate the latter.

[12] Having found that the plaintiff has failed to satisfy the third prong of the McDonnell Douglas Test, the court does not reach consideration of the fourth and related prong.

13

Having been unable to establish a prima case of age discrimination under the ADEA, the court finds that, as a matter of law, the defendant is entitled to summary judgment. However, even assuming that the plaintiff could make a prima facie case of age discrimination, the defendant is still entitled to summary judgment because the defendant has offered a legitimate, nondiscriminatory rationale for its actions and the plaintiff has failed to prove that it was but a pretext for discrimination.

The defendant's primary legitimate, nondiscriminatory rationale for its passing over the plaintiff for the I-84 Project was the plaintiff was not in fact next in line. Alternatively, the defendant contends that, even if the plaintiff were next in line, he could not have handled the job, having had injured himself with a lighter jackhammer on a previous assignment. The defendant's rationale for not referring the plaintiff to the apprenticeship program was because the program was not suited for a laborer with fifteen years of experience. Therefore, the burden shifts back to the plaintiff to demonstrate that these rationales are mere pretexts for discrimination.

The plaintiff argues that "there is a genuine dispute of material fact as to whether Leadum was next in line." (Pl.'s Mem. Opp. Mot., 12/9/02, at 11). However, as aforementioned, "[e]ven where facts are disputed, in order to defeat summary judgment, the nonmoving party must offer enough evidence to enable a reasonable jury to return a verdict in its favor." Byrnie, 243 F.3d at 101

14

(2d Cir. 2001)(citations omitted). The defendant argues that the plaintiff "merely makes conclusory allegations of discrimination, relying on the Defendant to identify the bases for the Plaintiff's allegations in hopes that the Defendant's response might serve to validate, in some nominal fashion, the Plaintiff's theory of age discrimination." (D.'s Mem. Supp. Mot., 11/13/03, at 12). This court agrees. The plaintiff has not offered enough evidence to enable a reasonable jury to conclude that he was passed over for the I-84 Project, much less that he was passed over for the I-84 project and that the rationales which the defendant provided were mere pretexts for age discrimination. Similarly, the plaintiff has not offered any evidence to show that the defendant's rationale for not referring him to the apprenticeship program was a pretext. As such, because the plaintiff failed to carry his burden under the third prong of the <u>McDonnell Douglas</u> framework, the defendant is entitled to summary judgment as a matter of law.

B.  **The Breach of Contract and Intentional or Negligent Infliction of Emotional Distress Claims**

The rest of the plaintiff's claims arise from the same set facts and circumstances that served the basis for his ADEA claim. Both rely on a finding that the defendant engaged in unlawful discrimination against the plaintiff in violation of the ADEA. Having already found that the plaintiff has not offered enough evidence to support his ADEA claim, the court finds that the

15

defendant is entitled summary judgment for these claims as well.

IT IS SO ORDERED.

　　　　Dated at Hartford, Connecticut this 7th day of January, 2004.

　　　　　　　　　　　　　　　　　　/s/ Thomas P. Smith
　　　　　　　　　　　　　　　　　　THOMAS P. SMITH
　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE